BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE INTEL MARKET PRACTICES ANTITRUST LITIGATION | ) ) ) ) MDL Docket No. _____ |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS
MICHAEL BRAUCH AND ANDREW MEIMES' MOTION TO TRANSFER AND
COORDINATE OR CONSOLIDATE FOR PRETRIAL PROCEEDINGS IN THE
NORTHERN DISTRICT OF CALIFORNIA
PURSUANT TO 28 U.S.C. SECTION 1407



RECEIVED JUL 14 2005 U.S. DISTRICT COURT DISTRICT OF DELAWARE

56586.1

Movants Michael Brauch and Andrew Meimes ("movants") respectfully submit this memorandum in support of their motion to: (1) transfer approximately three virtually identical antitrust consumer class actions brought by purchasers of x86 microprocessors and a single action brought by a competitor of defendant Intel Corporation ("Intel") to the Northern District of California;[1] and (2) consolidate those actions for coordinated pretrial proceedings in the Northern District of California along with ten currently pending actions there pursuant to 28 U.S.C. §1407 and the rules of the Judicial Panel On Multidistrict Litigation ("JPML" or "Panel").[2]

## I. INTRODUCTION AND BACKGROUND.

Intel holds a monopoly in a market critical to the nation's economy: microprocessors that run the Microsoft Windows and Linux families of operating systems (the "x86 Microprocessor Market"). While Advanced Micro Devices, Inc. and its subsidiary AMD International Sales & Service, Ltd. (collectively "AMD") compete with Intel in this global market, Intel possesses undeniable market power; its microprocessor revenues accounting for approximately 90% of the worldwide total (and 80% of the units).

It is alleged in the lawsuits at issue here that for over a decade, Intel has unlawfully maintained its monopoly by engaging in a relentless, worldwide campaign to coerce customers to refrain from dealing with AMD that has resulted in consumers paying higher prices for x86 microprocessors and left them with fewer buying choices for such microprocessors. Among other things:

- Intel has forced major direct customers into exclusive or near-exclusive deals;
- it has conditioned rebates, allowances and market development funding on direct customers' agreement to severely limit or forego entirely purchases from AMD;

---

[1] A schedule of actions is attached under a separate cover as Exhibit A.
[2] Copies of the complaints filed as of July 11, 2005 are attached under a separate cover as Exhibit B.

- it has established a system of discriminatory, retroactive, first-dollar rebates triggered by purchases at such high levels as to have the practical and intended effect of denying customers the freedom to purchase any significant volume of processors from AMD;
- it has threatened retaliation against direct customers introducing AMD computer platforms, particularly in strategic market segments;
- it has established and enforced quotas among key retailers effectively requiring them to stock overwhelmingly, if not exclusively, Intel-powered computers, thereby artificially limiting consumer choice;
- it has forced PC makers and technology partners to boycott AMD product launches and promotions;
- and it has abused its market power by forcing on the industry technical standards and products which have as their central purpose the handicapping of AMD in the marketplace.

It is asserted that Intel's economic coercion of customers extends from large computer-makers like Hewlett-Packard and IBM, to small system-builders, to wholesale distributors to retailers such as Circuit City. All must either accept conditions that exclude AMD or suffer discriminatory pricing and competitively crippling treatment. In this way, Intel has avoided competition on the merits and deprived AMD of the opportunity to stake its prices and quality against Intel's for every potential microprocessor sale. The lawsuits at issue here assert that not only was AMD injured by this tactic, but also that consumers of x86 microprocessors paid higher prices and had fewer product choices.

Consumers such as movants ultimately foot this bill, in the form of inflated PC prices and the loss of freedom to purchase computer products that best fit their needs. Society is worse off for lack of innovation that only a truly competitive market can drive. The Japanese Government recognized these competitive harms when on March 8, 2005, its Fair

Trade Commission (the "JFTC") recommended that Intel be sanctioned for its exclusionary misconduct directed at AMD. Intel chose not to contest the charges. *See* <http://www.jftc.go.jp/e-page/pressreleases/2005/march/050308intel.pdf> (attached under a separate cover as Exhibit C). The European Commission has also recently stepped up its investigation of Intel's marketing practices. *See* <http://news.com/EU+revisits+Intel+probe/2100-7341_3-5228652.html?tag=nl> (attached under a separate cover as Exhibit D).

Recently, AMD has struck back by filing an antitrust action against Intel in the United States District Court for the District of Delaware, revealing to the public for the first time many of Intel's unlawful practices. Multiple class action lawsuits by consumers of x86 microprocessors have followed.

Intel has numerous and systematic contacts with the United States as a whole so as to justify *in personam* jurisdiction upon it by the Courts of the United States. Its principal place of business is in Santa Clara, California. It therefore has engaged in all manner of business activities within the State of California and its conduct has had a foreseeable impact on the Northern District of California.

### A.    Cases at Issue.

As noted above, on June 27, 2005, AMD filed an antitrust action against Intel in Federal District Court in the District of Delaware alleging exclusionary conduct by Intel using its substantive market power, pursuant to section 2 of the Sherman Act, 15 U.S.C. §2, and sections 4 and 16 of the Clayton Act, 15 U.S.C. §§15(a) and 26. AMD also alleged various claims under California law. That action is captioned *Advanced Micro Devices, Inc.,* a Delaware corporation, and *AMD International Sales & Service, Ltd.*, a Delaware corporation v. *Intel Corp*, a Delaware corporation, and *Intel Kabushiki Kaisha,* a Japanese corporation, No. 1:05-cv-00441 (D. Del.); the action was assigned to Judge Joseph J. Farnan, Jr. The following consumer class action lawsuits have been filed in the wake of AMD's complaint:

- *David E. Lipton and Dana F. Thibedeau, individually and on behalf of all others similarly situated, v. Intel Corp.*, No. C:05-2669, filed in the United States District Court for the Northern District of California and assigned to Judge Marilyn Hall Patel, June 29, 2005 ("*Lipton*").

- *Ronald Konieczka, individually and on behalf of all others similarly situated, v. Intel Corp.*, No. C:05-2700, filed in the United States District Court for the Northern District of California and assigned to Judge Marilyn Hall Patel, June 30, 2005.

- *Maria I. Prohias, individually and on behalf of all others similarly situated, v. Intel Corp.*, No. C:05-2699, filed in the United States District Court for the Northern District of California and assigned to Judge James Larson, June 30, 2005.

- *Steven J. Hamilton, individually and on behalf of all others similarly situated, v. Intel Corp.*, No. C:05-2721, filed in the United States District Court for the Northern District of California and assigned to Judge Joseph C. Spero, July 1, 2005.

- *Patricia M. Niehaus, individually and on behalf of all others similarly situated, v. Intel Corp.*, No. C:05-2720, filed in the United States District Court for the Northern District of California and assigned to Judge Joseph C. Spero, July 1, 2005.

- *Michael Brauch, a resident of San Francisco, and Andrew Meimes, a resident of New York, on behalf of themselves and all others similarly situated, v. Intel Corp.*, No. C:05-2743, filed in the United States District Court for the Northern District of California and assigned to Judge Bernard Zimmerman, July 5, 2005 ("*Brauch*").

- *Susan Baxley, individually and on behalf of all others similarly situated v. Intel Corp.*, No. C-05-2758, filed in the United States District Court for the Northern District of California and assigned to Judge Edward M. Chen, July 6, 2005.

- *Jim Kidwell, Mary Reeder, John Maita, JWRE, Inc., Chrystal Moeller, and Caresse Harms, on their own behalves and on all others similarly situated, v. Intel Corp.*, No. 1:05-cv-00470, filed in the United States District Court for the District of Delaware on July 6, 2005. This action has not been assigned to a judge as of the date of this filing.

- *Robert J. Rainwater, Kathy Ann Chapman, and Sonia Yaco, on their own behalves and on behalf of all others similarly situated v. Intel Corp.*, No. 1:05-cv-00473, filed in the United States District Court for the District of Delaware on July 7, 2005. This action has not been assigned to a judge as of the date of this filing.

- *Matthew Kravitz and Raphael Allison, individually and on behalf of all others similarly situated v. Intel Corp.*, No. 1:05-cv-00476, filed in the United States District Court for the District of Delaware on July 8, 2005. This action has not been assigned to a judge as of the date of this filing.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER AND COORDINATE OR CONSOLIDATE FOR PRETRIAL PROCEEDINGS IN THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. SECTION 1407

- *Huston Frazier, Jeanne Cook Frazier and Brian Weiner, individually and on behalf of all others similarly situated v. Intel Corp.*, No. C:05-2813, filed in the United States District Court for the Northern District of California and assigned to Judge James Larson, July 11, 2005.

- *Dwight E. Dickerson, a resident of Oakland, California, individually and on behalf of all others similarly situated v. Intel Corp.*, No. C:05-2818, filed in the United States District Court for the Northern District of California and assigned to Judge James Larson, July 11, 2005.

- *The Harman Press, on behalf of itself and all others similarly situated v. Intel Corp.*, Case number to be assigned (this action was filed late in the day therefore a case number has not been assigned as of the date of this filing), filed in the United States District Court for the Northern District of California on July 11, 2005. This action has not been assigned to a judge as of the date of this filing.

Each complaint filed after AMD's complaint was brought as a class action on behalf of a putative class that purchased computers functioning with Intel microprocessors from at least June 29, 2001 to the present. All these complaints assert antitrust violations by Intel under either Section 1 of the Sherman Act (15 U.S.C. §1) or Section 2 of the Sherman Act (15 U.S.C. §2). Many of these actions also allege violations of various state antitrust or consumer protection statutes.

## II.  STATUTORY REQUIREMENTS.

All pretrial procedures in these antitrust class actions should be centralized in the Northern District of California because to do so would satisfy the statutory prerequisites for transfer and coordination or consolidation under Section 1407. This is so for several reasons: (1) the cases each "involv[e] one or more common questions of fact," in that allegations in the contemporaneously filed federal district court actions arise from a substantially identical underlying violations of United States antitrust laws; (2) transfer and centralization will further "the convenience of the parties and witnesses "since Intel's principal place of business is located in the San Francisco Bay Area (Santa Clara) located within the Northern District, thus easing burdensome production and administrative issues inherently related to the conduct of pretrial discovery; (3) AMD has its principal place of business in Sunnyvale, California, which is also located in the Northern District; and (4) transfer "will

56586.1                                -5-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER AND COORDINATE OR CONSOLIDATE FOR PRETRIAL PROCEEDINGS IN THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. SECTION 1407

promote the just and efficient conduct of [the] actions" by ensuring centralized oversight of pretrial evidentiary development by a district court familiar with the highly complex and document-intensive, above- referenced computer industry antitrust actions. *See* 28 U.S.C. §1407(a).

### III. ARGUMENT.

#### A. These Actions Are Appropriate For Transfer And Coordination or Consolidation For Pretrial Proceedings In The Northern District of California.

The first Section 1407(a) requirement—that the cases "involv[e] one or more common questions of fact"—is easily met here. Each action comprises allegations centered on the illegal antitrust activities of Intel with regards to the x86 microprocessor market in the United States. As noted above, the allegations in each of these actions are virtually identical. Coordination or consolidation for the purpose of pretrial proceedings would thus obviate the need for unnecessarily duplicative discovery. Given the common themes presented and factual allegations contained in each of these cases, coordination or consolidation is highly appropriate. *See, e.g., In re "Factor VIII or IX Concentrate Blood Prods." Prods. Liab. Litig.*, 853 F. Supp. 454, 455 (J.P.M.L. 1993) (common questions of fact regarding defendants' conduct); *In re Alert Income Partners Sec. Litig.*, 788 F. Supp. 1230, 1231 (J.P.M.L. 1992) (common questions of fact concerning alleged misrepresentations and omissions of information); *In re Oil Spill By the "Amoco Cadiz" Off the Coast of France on March 16, 1978*, 471 F. Supp. 473, 478 (J.P.M.L. 1979) (where common questions predominate, first factor favoring consolidation met even where some differing legal theories are present); *In re Litig. Arising From the Termination of Retirement Plan for Employees of Fireman's Fund Ins. Co.*, 422 F. Supp. 287, 290 (J.P.M.L. 1976) (common questions of fact in ERISA litigation).

1. **Consolidation Will Promote The Just and Efficient Conduct of These Actions.**

As discussed above, the complaints in the filed actions contain identical or nearly identical factual allegations. Where "an analysis of the complaints reveals a commonality of factual issues," transfer "is necessary in order to prevent duplication of discovery and eliminate the possibility of conflicting pretrial rulings." *In re A.H. Robins Co. "Dalkon Shield" IUD Prods. Liab. Litig.*, 406 F. Supp. 540, 542 (J.P.M.L. 1975). This will benefit the parties and conserve judicial resources. *See In re Temporomandibular Joint (TMJ) Implants Liab. Litig.*, 844 F. Supp. 1553, 1554 (J.P.M.L. 1994) ("*TMJ Implants*") (centralization "necessary in order to eliminate duplicative discovery, prevent inconsistent trial rulings, ... and conserve the resources of parties, their counsel and the judiciary"); *In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 793 F. Supp. 1098, 1100 (J.P.M.L. 1992) (same).

Given the common factual questions raised by the parties in each action, extensive discovery efficiencies will be gained by coordination in the Northern District of California. *See In re Cross-Fla. Barge Canal Litig.*, 329 F. Supp. 543, 544 (J.P.M.L. 1971) ("*Cross-Fla. Barge*") (consolidation of two actions ordered because "consolidation will eliminate the likelihood of repetitive discovery in [certain] areas, serving the convenience of the parties and witnesses and furthering the just and efficient conduct of the litigation"); *In re Multi-Piece Rim Prods. Liab. Litig.*, 464 F. Supp. 969, 974 (J.P.M.L. 1979) ("*Multi-Piece Rim*") (consolidation necessary "to prevent duplication of discovery and eliminate the possibility of conflicting pretrial rulings concerning these common factual issues"); *In re First Nat'l Bank, Heavener, Okla. (First Mortgage Revenue Bonds) Sec. Litig.*, 451 F. Supp. 995, 997 (J.P.M.L. 1978) (transfer "necessary, even though only two actions are involved, in order to prevent duplicative pretrial proceedings and eliminate the possibility of inconsistent pretrial rulings").

The fact that one action has been brought by Intel's competitor and the remaining thirteen actions have been brought by consumers on behalf of various consumer classes does not preclude transfer to a single judicial district for pretrial coordination. All fourteen actions involve the same or similar antitrust allegations and the common questions of fact concerning whether Intel's conduct violates United States antitrust laws. *See In re Managed Care Litigation,* 2000 WL 1925080 (J.P.M.L. 2000) (numerous actions brought by both provider and subscriber plaintiffs coordinated in the Southern District of Florida to allow a single judge to formulate a pretrial program that allows pretrial proceedings with respect to any non-common issues to proceed with pretrial proceedings on common issues). Even if the differences between a competitor action and consumer actions were viewed as presenting factual issues, despite the common legal issues being alleged, consolidation into a single district would be appropriate. *See Multi-Piece Rim,* 464 F. Supp at 974 (coordination is appropriate even though individualized factual issues exist in each action since substantial common factual issues are present and the transferee judge has the authority to group proceedings on different discovery tracks and schedule any discovery unique to any party).

    a.    <u>Transfer Will Facilitate the Uniformity of Class Action Treatment.</u>

The fact that the plaintiffs in each of these actions, with the exception of the AMD action, seek certification of identical or very similar putative classes makes these actions particularly attractive candidates for consolidation by this Panel. The Panel has "consistently held that transfer of actions under Section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determinations exists." *In re Sugar Indus. Antitrust Litig.,* 395 F. Supp. 1271, 1273 (J.P.M.L. 1975). *See also TMJ Implants,* 844 F. Supp. at 1554 ("[c]entralization is necessary in order ... to prevent inconsistent pretrial rulings (especially with respect to class certifications and summary judgments)"); *In re Roadway Express, Inc. Employment Practices Litig.,* 384 F. Supp. 612, 613 (J.P.M.L. 1974) ("the existence of and

56586.1    -8-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER AND COORDINATE OR CONSOLIDATE FOR PRETRIAL PROCEEDINGS IN THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. SECTION 1407

the need to eliminate [the possibility of inconsistent class determinations] presents a highly persuasive reason favoring transfer under Section 1407"); *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 493 (J.P.M.L. 1968) (transfer necessary to avoid "pretrial chaos in conflicting class action determinations"); *In re Hawaiian Hotel Room Rate Antitrust Litig.*, 438 F. Supp. 935, 936 (J.P.M.L. 1977) ("[s]ection 1407 centralization is especially important to ensure consistent treatment of the class action issues"); *In re Mutual Fund Sales Antitrust Litig.*, 361 F. Supp. 638, 639-40 (J.P.M.L. 1973) ("we have frequently held that the possibility for conflicting class determinations under [Fed.R.Civ.P. 23] is an important factor favoring transfer of all actions to a single district").

As noted above, an examination of the putative classes described in the fourteen class action complaints demonstrates that the proposed classes are either identical or very similar. Because of this fact, the arguments to be presented both for and against certification will presumably be the same. Thus, there will exist a substantial possibility of inconsistent rulings on class certification and other class action-related issues if these cases are not consolidated. Given the identity or close similarity of the proposed classes in these actions, the parties and the courts would benefit from having a single judge oversee the class action issues to avoid both duplicative efforts and inconsistent rulings. *See, e.g., In re Rio Hair Naturalizer Prods. Liab. Litig.*, 904 F. Supp. 1407, 1408 (J.P.M.L. 1995) ("[c]entralization under Section 1407 is necessary in order to ... prevent inconsistent pretrial rulings (especially with respect to overlapping class certification requests)"); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 568 F. Supp. 1250, 1251 (J.P.M.L. 1983) (centralization necessary where overlapping class certifications sought in all relevant actions); *In re Cuisinart Food Processor Litig.*, 506 F. Supp. 651, 655 (J.P.M.L. 1981) ("*Cuisinart*"); *In re Resource Exploration, Inc., Sec. Litig.*, 483 F. Supp. 817, 821 (J.P.M.L. 1980) ("[a]n additional justification for transfer is the fact that most of the actions before us have been brought on behalf of similar or overlapping classes of purchasers of the limited partnerships").

### b. These Actions Are Sufficiently Complex to Warrant Transfer.

Here, these cases involve antitrust litigation, a subject that the Panel has consistently and repeatedly found sufficiently complex to warrant transfer. *See, e.g., In re Corn Derivatives Antitrust Litig.*, 486 F. Supp. 929 (J.P.M.L. 1980) ("*Corn Derivatives*"); *In re Preferential Drug Products Antitrust Litig.*, 429 F. Supp. 1027 (J.P.M.L. 1979) ("*Preferential Drug Prods.*"); *In re New Mexico Natural Gas Antitrust Litig.*, 482 F. Supp. 333, 336 (J.P.M.L. 1979); *In re California Armored Car Antitrust Litig.*, 476 F. Supp. 452, 454 (J.P.M.L. 1979); *In re Folding Carton Antitrust Litig.*, 415 F. Supp. 384 (J.P.M.L. 1976).

The Panel has stated that where the issues involved are sufficiently complex and consolidation will prevent the duplication of discovery and pretrial rulings, it will not require large numbers of pending cases in order to grant consolidation under 28 U.S.C. §1407. *See, e.g., In re First Nat'l Bank,* 451 F. Supp. at 996; *In re New Mexico Natural Gas Antitrust Litig.*, 482 F. Supp. 333, 336 (J.P.M.L. 1979); *In re California Armored Car Antitrust Litig.*, 476 F. Supp. 452, 454 (J.P.M.L. 1979); *Cross-Fla. Barge,* 329 F. Supp. at 544; *In re Ironworkers Union Employment Practices Litig.*, 424 F. Supp. 1072 (J.P.M.L. 1976); *In re Ryder Truck Lines, Inc. Employment Practices Litig.*, 405 F. Supp. 308 (J.P.M.L. 1975); *In re Eastern Airlines, Inc. Flight Attendant Weight Program Litig.*, 391 F. Supp. 763 (J.P.M.L. 1975). Indeed, the Panel has consolidated as few as two cases. *See In re Clark Oil & Ref. Corp. Antitrust Litig.*, 364 F. Supp. 458 (J.P.M.L. 1973).

The pending actions clearly present complex factual issues relating to antitrust violations that have gone on for many years. Thus, there are a significant number of similar complex putative class actions arising from Defendant's same course of conduct. Accordingly, these actions are well suited for coordination or consolidation.

56586.1                                -10-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER AND COORDINATE OR CONSOLIDATE FOR PRETRIAL PROCEEDINGS IN THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. SECTION 1407

B.  **Venue in the Northern District of California Will Further the Convenience of the Parties and Witnesses.**

The Northern District of California is clearly the most appropriate transferee district for this docket. The documents to be produced by Intel as well as the transcripts of testimony by Intel deponents will undoubtedly be sought by the litigants in all of the filed actions, and those materials are, by all indication, located in the Northern District of California. *In re Air Crash Disaster Near Coolidge, Ariz., on May 6, 1971*, 362 F. Supp. 572, 573 (J.P.M.L. 1973) (location of documents and anticipated testimony important to consolidation decision).

Undoubtedly, the plaintiffs, in each of the actions referenced herein, will seek the testimony of many of the same individuals, and request discovery of a significant number of documents already under the jurisdiction of the Northern District of California. The pre-existing judicial oversight of documents, witnesses, testimony and things in the Northern District of California will significantly mitigate the costs, time and efforts otherwise inherent in the discovery process of complicated antitrust class actions of the type presented herein for litigants. In addition, the median time for filing to disposition of civil cases is swifter in the Northern District of California than it is in the District of Delaware. According to 2004 statistics found at <http://www.uscourts.gov/judbus2004/appendices/c5.pdf> (attached under separate cover as Exhibit E), the median time in the District of Delaware is 29.0 months, as opposed to 23.0 months in the Northern District of California. Obviously, the savings in time and expense that will result from coordination or consolidation in the Northern District of California will benefit the plaintiffs and Intel, and will result in the efficient allocation of judicial resources as well. *See, e.g., Cuisinart*, 506 F. Supp. at 655 (transfer would "effectuate a significant overall savings of cost and a minimum of inconvenience to all concerned with the pretrial activities"); *In re Uranium Indus. Antitrust Litig.*, 458 F. Supp. 1223, 1230 (J.P.M.L. 1978) ("[plaintiffs] will have to depose many of the same witnesses,

56586   -11-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER AND COORDINATE OR CONSOLIDATE FOR PRETRIAL PROCEEDINGS IN THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. SECTION 1407

examine many of the same documents, and make many similar pretrial motions in order to prove their ... allegations. The benefits of having a single judge supervise this pretrial activity are obvious"); *In re Sterling Homex Corp. Sec. Litig.*, 405 F. Supp. 314, 315 (J.P.M.L. 1975) ("[w]e are confident that Section 1407 treatment will allow the *Fernon* plaintiffs to experience a net savings of time, effort and expenses through pooling their resources with other plaintiffs in the transferee district who share similar interests").

> 1. **Northern District Of California Has A Significant Nexus To This Litigation And Is Easily Accessible To All Parties And Witnesses To This Litigation.**

The benefits of transferring cases for pretrial consolidation to a venue with some nexus to the common factual allegations of the actions are clearly recognized by this Panel. *In re Sundstrand Data Control, Inc. Patent Litig.*, 443 F. Supp. 1019, 1021 (J.P.M.L. 1978); *In re Automotive Refinishing Paint*, 177 F. Supp.2d 1378, 1379 (J.P.M.L. 2001). The Northern District of California clearly has a significant nexus to the common factual allegations of the filed actions. Both Intel and AMD are headquartered therein. The anticompetitive business practices and strategies alleged in the lawsuits were likely developed and implemented at Intel's headquarters. The Intel witnesses who are most knowledgeable about those practices and strategies are likely to be found in the Northern District. The same is true of documents reflecting those practices and strategies. Likewise, many of the witnesses and documents from AMD relevant to the claims in the various actions are likely to be found in the Northern District.

The Northern District of California is easily accessible for all parties involved in this litigation in that three major airports are located within 45 miles or less from both San Francisco and the Oakland Divisions of the Northern District of California: San Francisco International Airport, Oakland International Airport, and San Jose International Airport. Furthermore, virtually all major domestic and international airlines have routine service to the

San Francisco Bay Area. The Panel favors transfer to venues that are relatively accessible to parties and witnesses. See *In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig.*, 196 F. Supp. 2d 1373, 1375 (J.P.M.L. 2002). The convenience of the parties would therefore be best served by transference to the Northern District of California.

### 2. The United States District Court for the Northern District of California Has A Favorable Docket.

The docket of a potential district is also an important consideration in evaluating the proper court for transfer in order to assist in "expeditious conclusion." *See, e.g., Corn Derivatives; Preferential Drug Prods.; In re Air Crash Disaster at Tai-pei International Airport*, 368 F. Supp. 1311 (J.P.M.L. 1973); *In re Transit Company Tire Antitrust Litig.*, 350 F. Supp. 1165, 1166 (J.P.M.L. 1972); *In re Kauffman Mutual Fund Actions*, 337 F. Supp. 1337, 1339 (J.P.M.L. 1972). According to the latest statistics available form the Judicial Panel on Multi District Litigation related to distribution of pending MDL Dockets, there are only eleven active multidistrict litigations pending in the Northern District of California.[3] The Northern District also has a wealth of experienced judges well versed in overseeing consolidated multidistrict actions as well as adjudicating complex antitrust class action cases. *See, e.g., In re Dynamic Random Access Memory ("DRAM") Antitrust Litig.* (MDL-1486); *In re Methionine Antitrust Litig.* (MDL-1311), *In re Sodium Gluconate Antitrust Litig.* (MDL-1226); *In re Citric Acid Antitrust Litig.* (MDL-1092); *In re Insurance Antitrust Litig.* (MDL-767); *In re Super Premium Ice Cream Distribution Antitrust Litig.* (MDL-682); *In re Coconut Oil Antitrust Litig.* (MDL-474); *In re Data General Corp. Antitrust Litig.* (MDL-369); *In re Airport Car Rental Antitrust Litig.* (MDL-338); *In re IBM Peripheral EDP Devices Antitrust Litig.* (MDL-150); *In re Pretrial Proceedings in Petroleum Products Antitrust Litig.* (MDL-163); *In re Consolidated Pre-trial Proceedings in Holiday Magic Cases* (MDL-124).

---

[3]   *See* Distribution of Pending MDL Dockets as of May 10, 2005 attached under a separate cover as Exhibit F.

3.  **The Honorable Marilyn Hall Patel.**

The plaintiffs in *Brauch* have filed a motion to have the cases pending in the Northern District consolidated before Chief Judge Marilyn Hall Patel, who is presiding over *Lipton*, the first-filed case in that district. Movants believe Judge Patel would be an excellent choice for the judge before whom these cases should be consolidated. Judge Patel has been a district judge for 25 years and has presided over past multidistrict litigation, such as the *In re Napster, Inc. Copyright Litig.*, MDL No. 1369. She would oversee these lawsuits with diligence and expertise.

## IV. CONCLUSION.

For the foregoing reasons, the coordination or consolidation of these putative class actions would further "the convenience of parties and witnesses and [would] promote the just and efficient conduct of [the] actions." 28 U.S.C. Section 1407(a). Therefore, movants respectfully requests that this Panel enter an order transferring the Delaware actions listed in the Schedule of Actions attached as Exhibit A to their motion to the Northern District of California for consolidated and coordinated pretrial proceedings.

Dated: July 11, 2005

By: _____
Michael P. Lehmann
Thomas P. Dove
Alex C. Turan
THE FURTH FIRM LLP
225 Bush Street, 15th Floor
San Francisco, California 94104-4249
Telephone: (415) 433-2070
Facsimile: (415) 982-2076

Francis O. Scarpulla
LAW OFFICES OF FRANCIS SCARPULLA
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: (415) 788-7210
Facsimile: (415) 788-0707

Craig C. Corbitt
ZELLE HOFFMANN VOELBEL MASON &
    GETTE, LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: (415) 693-0700
Facsimile:  (415) 693-0770


Attorneys For Plaintiffs Michael Brauch and
Andrew Meimes

TABLE OF CONTENTS

I.  INTRODUCTION AND BACKGROUND. ...................................................................1

   A.  Cases at Issue. ..............................................................................................3

II. STATUTORY REQUIREMENTS. ..............................................................................5

III. ARGUMENT. ..............................................................................................................6

   A.  These Actions Are Appropriate For Transfer And Coordination or
       Consolidation For Pretrial Proceedings In The Northern District of
       California. .....................................................................................................6

       1.  Consolidation Will Promote The Just and Efficient Conduct of These Actions. 7
       a.  Transfer Will Facilitate the Uniformity of Class Action Treatment. .............. 8
       b.  These Actions Are Sufficiently Complex to Warrant Transfer. ................... 10

   B.  Venue in the Northern District of California Will Further the
       Convenience of the Parties and Witnesses. ........................................... 11

       1.  Northern District Of California Has A Significant Nexus To This Litigation And
           Is Easily Accessible To All Parties And Witnesses To This Litigation. ........ 12
       2.  The United States District Court for the Northern District of California Has A
           Favorable Docket. ............................................................................................. 13
       3.  The Honorable Marilyn Hall Patel. .................................................................. 14

IV. CONCLUSION. .........................................................................................................14